1  Ellisen Shelton Turner (SBN 224842)
   ellisen.turner@kirkland.com
2  KIRKLAND & ELLIS LLP
   2049 Century Park East, Suite 3700
3  Los Angeles, CA 90067
   T: (310) 552-4200
4  F: (310) 552-5900

5  Jonathan D. Brit (to be admitted *pro hac vice*)
   jonathan.brit@kirkland.com
6  601 Lexington Avenue
   New York, NY 10022
7  T: (212) 446-4800
   F: (212) 446-4900

8
   Yan-Xin Li (SBN 332329)
9  yanxin.li@kirkland.com
   KIRKLAND & ELLIS LLP
10 555 California Street, 27th Floor
   San Francisco, CA 94104
11 T: (415) 439-1400
   F: (415) 439-1500

12
   *Attorneys for Applicants Meta Platforms, Inc.;*
13 *Instagram, Inc.; WhatsApp LLC; Meta Platforms*
   *Technologies, LLC; and GIPHY, Inc.*

14
                    **UNITED STATES DISTRICT COURT**
15
                    **NORTHERN DISTRICT OF CALIFORNIA**
16

17 META PLATFORMS, INC.;            ) Case No. 24-80086
   INSTAGRAM, INC.; WHATSAPP LLC;   )
18 META PLATFORMS                   ) **MISCELLANEOUS APPLICATION AND EX**
   TECHNOLOGIES, LLC; AND GIPHY, INC., ) **PARTE MOTION FOR THE ISSUANCE OF**
19                                  ) **SUBPOENA AD TESTIFICANDUM AND**
              Applicants,           ) **SUBPOENA DUCES TECUM TO MICHAEL**
20                                  ) **ISARD PURSUANT TO 35 U.S.C. § 24 AND**
         v.                         ) **CIVIL L.R. 7-10**
21                                  )
   VL COLLECTIVE IP LLC,            )
22                                  )
              Respondent.           )
23                                  )

24

25

26

27

28

Pursuant to 35 U.S.C. § 24 and Civil L.R. 7-10, Applicants Meta Platforms, Inc.; Instagram, Inc.; WhatsApp LLC; Meta Platforms Technologies, LLC; and GIPHY, Inc. (collectively, "Applicants") hereby apply for the issuance of (1) a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises, and (2) a Subpoena to Testify at a Deposition (collectively, the "Subpoenas"), both directed to Michael Isard.  The proposed Subpoenas are respectively attached hereto as Exhibits 1 and 2.  The purpose of these Subpoenas is to obtain discoverable information on a single and narrow issue in connection with a proceeding titled *Meta Platforms, Inc. v. VL Collective IP LLC*, IPR2023-00924 currently pending before the Patent Trial and Appeal Board ("Board") at the United States Patent and Trademark Office ("PTO").

In support of this Application, Applicants represent as follows:

1.      On May 24, 2023, Applicants filed a petition for *inter partes* review ("IPR"), challenging the validity of all claims 1–16 of U.S. Patent No. 7,436,980 ("'980 Patent").  *Meta Platforms, Inc. v. VL Collective IP LLC*, IPR2023-00924, Paper 3 (P.T.A.B. May, 24, 2023).

2.      VL Collective IP LLC is the Patent Owner and current assignee of the '980 Patent, and a real party-in-interest in the IPR proceeding.

3.      On December 6, 2023, the Board instituted *inter partes* review of the '980 Patent.  *Meta Platforms*, Paper 11 (P.T.A.B. Dec. 6, 2023).

4.      On January 16, 2024, Applicants filed a Motion ("Motion") for Authorization to Compel Testimony and Production of Documents Under 37 C.F.R. § 42.52(a) with the Board.  This Motion requested authorization to compel discovery concerning the public availability of a paper titled "Tracking Loose-limbed People" ("TLP") before May 27, 2004.  *Meta Platforms*, Paper 17 (P.T.A.B. Jan. 16, 2024).  A true and correct copy of TLP is attached as Exhibit 3.

5.      On February 22, 2024, the Board issued an Order granting Applicants the right to compel production of documents and testimony concerning the public availability of TLP from the following individuals:

i       Leonid Sigal—first-named author of TLP and first-named inventor of the '980 Patent;

ii      Sidharth Bhatia, Stefan Roth, Michael Black, and Michael Isard—other named authors of TLP; and

iii     Ying Zhu and Dorin Comaniciu—the other inventors of the '980 Patent.

*Meta Platforms*, Paper 25 (P.T.A.B. Feb. 22, 2024).  A true and correct copy of the Board's Order is attached as Exhibit 4.

6.     Michael Isard is a natural person and United States citizen who resides in the Northern District of California.

7.     Pursuant to 35 U.S.C. §24, a subpoena to compel the production of documents and the attendance of a witness to give testimony in a matter pending before the Board must be issued by the United States court for the District in which the testimony is to be taken.  That Section provides, in relevant part:

> The clerk of any United States court for the district wherein testimony is to be taken for use in any contested case in the Patent and Trademark Office, shall, upon the application of any party thereto, issue a subpoena for any witness residing or being within such district, commanding him to appear and testify before an officer in such district authorized to take depositions and affidavits, at the time and place stated in the subpoena. The provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents and things shall apply to contested cases in the Patent and Trademark Office.

8.     An applicant can also obtain non-party documents by subpoena pursuant to 35 U.S.C. § 24, with or without a deposition.  *El Encanto, Inc. v. Hatch Chile Co., Inc.*, 825 F.3d 1161, 1166–67 (10th Cir. 2016) ("And by all accounts that's at least one reason why Congress eventually adopted what is now § 24—to help the PTO secure needed evidence from recalcitrant nonparties by giving parties to its proceedings the power to seek and obtain subpoenas enforceable in federal court.  A rationale that seems to extend not just to nonparty testimony but equally and independently to their documents." (internal citations omitted)).

9.     This Application is proper pursuant to 35 U.S.C. § 24 because the Subpoenas seek narrowly-tailored information concerning the public availability of TLP before May 27, 2004 that is highly relevant to an ongoing IPR proceeding; the Subpoenas meet all the statutory requirements for issuance under 35 U.S.C. § 24; and Applicants will comply with the applicable provisions of the Federal Rule of Civil Procedure 45.

10.     Accordingly, Applicants respectfully request that the Court grant this Application and enter an order requiring the Clerk issue the Subpoenas attached hereto as Exhibits 1 and 2 to compel

2

1    Michael Isard to produce documents and other information and to attend a deposition concerning the

2    public availability of TLP before May 27, 2004.

3

4    Dated: April 9, 2024                    Respectfully submitted,

                                            KIRKLAND & ELLIS LLP
5
                                            /s/ Yan-Xin Li
6
                                            Ellisen Shelton Turner (SBN 224842)
7                                           ellisen.turner@kirkland.com
                                            KIRKLAND & ELLIS LLP
8                                           2049 Century Park East, Suite 3700
                                            Los Angeles, CA 90067
9                                           T: (310) 552-4200
                                            F: (310) 552-5900
10
                                            Jonathan D. Brit (to be admitted *pro hac vice*)
11                                          jonathan.brit@kirkland.com
                                            601 Lexington Avenue
12                                          New York, NY 10022
                                            T: (212) 446-4800
13                                          F: (212) 446-4900

14                                          Yan-Xin Li (SBN 332329)
                                            yanxin.li@kirkland.com
15                                          KIRKLAND & ELLIS LLP
                                            555 California Street, 27th Floor
16                                          San Francisco, CA 94104
                                            T: (415) 439-1400
17                                          F: (415) 439-1500

18                                          *Attorneys for Applicants Meta Platforms, Inc.;*
                                            *Instagram, Inc.; WhatsApp LLC; Meta Platforms*
19                                          *Technologies, LLC; and GIPHY, Inc.*

20

21

22

23

24

25

26

27

28

                                            3

# EXHIBIT 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| META PLATFORMS, INC., et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. |
| VL COLLECTIVE IP LLC | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                          MICHAEL ISARD
                 160 Russ Street #164, San Francisco, CA 94103
_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

> See Schedule A.  Please provide documents electronically to yanxin.li@kirkland.com by April 26, 2024.
> Contact Yan-Xin Li at yanxin.li@kirkland.com or (415) 439-1618 with questions.

| Place: Kirkland & Ellis LLP | Date and Time: |
|---|---|
| 555 California Street | |
| San Francisco, CA 94104 | 04/26/2024 5:00 pm |

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

         *CLERK OF COURT*
                                              OR
_____        _____
   *Signature of Clerk or Deputy Clerk*                     *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   META PLATFORMS, INC.,
INSTAGRAM, INC., WHATSAPP LLC, META PLATFORMS TECHS., LLC and GIPHY, INC.  , who issues or requests this subpoena, are:

Yan-Xin Li, Kirkland & Ellis LLP, 555 California St, San Francisco, CA 94104, (415) 439-1618, yanxin.li@kirkland.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                                  *Server's signature*

                                                         _____
                                                                  *Printed name and title*

                                                         _____
                                                                  *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A—REQUESTS FOR PRODUCTION

### DEFINITIONS

The words and phrases used herein shall have the meanings ascribed to them under the Federal Rules of Civil Procedure.  In addition, the following terms shall have the meanings set forth below whenever used in this Schedule A unless the context requires otherwise.

1.      "You" and "Your" means the natural person Michael Isard.

2.      "Person(s)" means any natural person or legal entity, including, without limitation, any business or governmental entity or association.

3.      "Document(s)" is synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

4.      "Communication(s)" means the transmittal of information (in the form of facts, ideas, inquires, or otherwise) by oral, written, telephonic, electronic, or any other means.

5.      "Identify" means to give, to the extent known, the type of document, general subject matter, date of the document, and author(s), addressee(s), and recipient(s).

6.      "Concerning" means relating to, referring to, describing, evidencing, or constituting.

7.      "Date(s)" means the exact day, month, and year, if ascertainable, or, if not, the closest approximation thereto that can be made by means of a relationship to other events, locations, or matters.

8.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

9.      The conjunctives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

10.     The use of the singular form of any word includes the plural and vice versa. Whenever appropriate, the verb tenses shall be interpreted to include past, present, and future tenses.

11.     "CVPR 2004" means the IEEE Computer Society Conference on Computer Vision and Pattern Recognition held in Washington, D.C. from June 27, 2004 to July 2, 2004.

12.    "TLP" means the 2004 paper titled "Tracking Loose-limbed People," which lists Leonid Sigal, Sidharth Bhatia, Stefan Roth, Michael J. Black, and Michael Isard as authors; and is included in Volume 1 of the Proceedings of the 2004 IEEE Computer Society Conference on Computer Vision and Pattern Recognition at pages I-421-I-428.  A public copy of TLP is available at:

https://www.cs.ubc.ca/~lsigal/Publications/cvpr2004sigal.pdf;

and also referenced at the IEEE Xplore website at:

https://ieeexplore.ieee.org/abstract/document/1315063;

and at the ResearchGate website at:

https://www.researchgate.net/publication/4082208_Tracking_loose-limbed_people.

### INSTRUCTIONS

1.    The Requests are intended to cover all Documents and Communications in Your possession, custody, or control.  "Possession, custody, or control," as used in the preceding sentence, includes a Document or Communication in Your actual possession or custody, or the right or practical ability to obtain the Document or Communication or a copy thereof upon demand from one or more Your affiliates, predecessors or successors in interest, employers, employees, agents, consultants, representatives, independent contractors, advisors, attorneys, relatives, friends, and any other person or public or private entity that has actual physical possession or custody thereof.

2.    Pursuant to Federal Rule of Civil Procedure 45, You shall produce responsive Documents or Communications as they have been kept in the usual course of business or shall organize and label them to correspond to the enumerated requests of this demand.  If You have no Documents or Communications responsive to a particular category, You shall so state in writing.

3.    Each Request seeks production of each Document or Communication in its entirety, without abbreviation or redaction, including, without limitation, all attachments, transmittal sheets, notes, cover letters, exhibits, enclosures and all drafts and nonidentical copies of each Document.

4.    When only a portion of a Document or Communication is believed to be privileged, the nonprivileged portion shall be produced with the allegedly privileged portion redacted and indicated as such.  Any attachment to an allegedly privileged Document or Communication shall be

2

produced unless You also content that the attachment is privileged, in which case the information required therein shall be provided separately for each attachment.

5.      In the event that any Document or Communication responsive to the Request was, but is no longer, in Your possession, custody, or control, or has been lost, destroyed, discarded, or otherwise disposed of, You are requested to identify such Document or Communication as completely as possible, including without limitation, the following information: (a) the nature of the Document or Communication, including its subject matter; (b) the person who prepared or authorized the Document or Communication and, if applicable, the person to whom the Document or Communication was sent; (c) the date on which the Document or Communication was prepared or transmitted; and (d) if possible, what has happened to the Document or Communication or where it or any copies of it may be located, or if the Document or Communication was lost or destroyed, the date on which the Document or Communication was lost or destroyed, and if destroyed, the conditions of and the reasons for such destruction and the persons requesting and performing the destruction.

6.      You shall take immediate steps to preserve all Documents and Communications responsive to these Requests, including electronic data that may exist on backup and/or other archived electronic computerized data compilations.  These measures must include, but are not limited to, discontinuation of all data destruction and backup tape recycling policies applicable to such Documents and Communication.

## REQUESTS

**REQUEST NO. 1:**

Documents and Communications (including emails) concerning the publication date or the public availability of TLP.

**REQUEST NO. 2:**

Documents and Communications (including emails) dated before May 27, 2004 concerning or referencing TLP.

Schedule A to Document Subpoena to M. Isard

**REQUEST NO. 3:**

Documents and Communications (including emails and brochures) concerning TLP's paper submission process to CVPR 2004.

**REQUEST NO. 4:**

Documents and Communications concerning the public sharing, distribution, and/or dissemination of TLP before May 27, 2004, or before or during CVPR 2004.

**REQUEST NO. 5:**

Drafts or earlier versions of TLP that were shared, distributed, and/or disseminated before May 27, 2004 or before CVPR 2004.

# EXHIBIT 2

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

Northern District of California

| | |
|---|---|
| META PLATFORMS, INC., et al. | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No. _____ |
| VL COLLECTIVE IP LLC | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                      MICHAEL ISARD
               160 Russ Street #164, San Francisco, CA 94103
*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Kirkland & Ellis LLP<br>555 California Street<br>San Francisco, CA 94104 | Date and Time:<br><br>05/01/2024 9:00 am |
|---|---|

The deposition will be recorded by this method:  Stenographically and/or by video

☐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

       *CLERK OF COURT*
                                               OR
       _____          _____
        *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  META PLATFORMS, INC., INSTAGRAM, INC., WHATSAPP LLC, META PLATFORMS TECHS., LLC and GIPHY, INC.  , who issues or requests this subpoena, are:

Yan-Xin Li, Kirkland & Ellis LLP, 555 California St, San Francisco, CA 94104, (415) 439-1618, yanxin.li@kirkland.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

### PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## <u>SCHEDULE A—TOPICS FOR EXAMINATION</u>

### DEFINITIONS

The words and phrases used herein shall have the meanings ascribed to them under the Federal Rules of Civil Procedure.  In addition, the following terms shall have the meanings set forth below whenever used in this Schedule A unless the context requires otherwise.

1.      "You" and "Your" means the natural person Michael Isard.

2.      "Person(s)" means any natural person or legal entity, including, without limitation, any business or governmental entity or association.

3.      "Document(s)" is synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

4.      "Communication(s)" means the transmittal of information (in the form of facts, ideas, inquires, or otherwise) by oral, written, telephonic, electronic, or any other means.

5.      "Identify" means to give, to the extent known, the type of document, general subject matter, date of the document, and author(s), addressee(s), and recipient(s).

6.      "Concerning" means relating to, referring to, describing, evidencing, or constituting.

7.      "Date(s)" means the exact day, month, and year, if ascertainable, or, if not, the closest approximation thereto that can be made by means of a relationship to other events, locations, or matters.

8.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

9.      The conjunctives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

10.      The use of the singular form of any word includes the plural and vice versa.  Whenever appropriate, the verb tenses shall be interpreted to include past, present, and future tenses.

11.      "CVPR 2004" means the IEEE Computer Society Conference on Computer Vision and Pattern Recognition held in Washington, D.C. from June 27, 2004 to July 2, 2004.

12.    "TLP" means the 2004 paper titled "Tracking Loose-limbed People," which lists Leonid Sigal, Sidharth Bhatia, Stefan Roth, Michael J. Black, and Michael Isard as authors; and is included in Volume 1 of the Proceedings of the 2004 IEEE Computer Society Conference on Computer Vision and Pattern Recognition at pages I-421-I-428.  A public copy of TLP is available at:

https://www.cs.ubc.ca/~lsigal/Publications/cvpr2004sigal.pdf;

and also referenced at the IEEE Xplore website at:

https://ieeexplore.ieee.org/abstract/document/1315063;

and at the ResearchGate website at:

https://www.researchgate.net/publication/4082208_Tracking_loose-limbed_people.

**MATTERS UPON WHICH EXAMINATION IS REQUESTED**

**TOPIC NO. 1:**

The publication date or the public availability of TLP.

**TOPIC NO. 2:**

Documents and Communications dated before May 27, 2004 that concern or reference TLP.

**TOPIC NO. 3:**

TLP's paper submission process to CVPR 2004.

**TOPIC NO. 4:**

The public sharing, distribution, and/or dissemination of TLP before May 27, 2004, or before or during CVPR 2004.

**TOPIC NO. 5:**

Drafts or earlier versions of TLP that were shared, distributed, and/or disseminated before May 27, 2004 or before CVPR 2004.

**TOPIC NO. 6:**

The authenticity of any Document or Communication produced by You in response to the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises served herewith.

# EXHIBIT 3

# Tracking Loose-limbed People

**Leonid Sigal**[*]  **Sidharth Bhatia**[*]  **Stefan Roth**[*]  **Michael J. Black** [*]  **Michael Isard**[†]

[*]Department of Computer Science, Brown University Providence, RI 02912
[†]Microsoft Research Silicon Valley, Mountain View, CA 94043

`{ls,sibhatia,roth,black}@cs.brown.edu, misard@microsoft.com`

## Abstract

*We pose the problem of 3D human tracking as one of inference in a graphical model. Unlike traditional kinematic tree representations, our model of the body is a collection of loosely-connected limbs. Conditional probabilities relating the 3D pose of connected limbs are learned from motion-captured training data. Similarly, we learn probabilistic models for the temporal evolution of each limb (forward and backward in time). Human pose and motion estimation is then solved with non-parametric belief propagation using a variation of particle filtering that can be applied over a general loopy graph. The loose-limbed model and decentralized graph structure facilitate the use of low-level visual cues. We adopt simple limb and head detectors to provide "bottom-up" information that is incorporated into the inference process at every time-step; these detectors permit automatic initialization and aid recovery from transient tracking failures. We illustrate the method by automatically tracking a walking person in video imagery using four calibrated cameras. Our experimental apparatus includes a marker-based motion capture system aligned with the coordinate frame of the calibrated cameras with which we quantitatively evaluate the accuracy of our 3D person tracker.*

## 1  Introduction

We present a fully automatic method for tracking human bodies in 3D. Initialization and failure recovery are facilitated by the use of a loose-limbed body model [22] in which limbs are connected via learned probabilistic constraints. The tracking problem is formulated as one of inference in a graphical model and belief propagation is used to estimate the pose of the body at each time-step. Each node in the graphical model represents the 3D position and orientation of a limb (Figure 1). Directed edges between nodes represent statistical dependencies and these constraints between limbs are used to form messages that are sent to neighboring nodes in space and time. Additionally, each node has an associated likelihood defined over a rich set of image cues using a learned Gibbs model [19, 28]. The combination of



Figure 1: *Graphical model for a person.* Nodes represent limbs and arrows represent conditional dependencies between limbs. For clarity only a few temporal dependencies have been shown: in our model each part $i$ at time $t$ is connected by an edge to part $i$ at times $t-1$ and $t+1$.

highly non-Gaussian likelihoods and a six-dimensional continuous parameter space (3D position and orientation) for each limb makes standard belief propagation algorithms infeasible. Consequently we exploit a form of non-parametric belief propagation that uses a variation of particle filtering and can be applied over a loopy graph [13, 25].

There are a number of significant advantages to this approach as compared to traditional methods for tracking human motion. Most current techniques model the body as a kinematic tree in 2D [14], 2.5D [17], or 3D [2, 5, 21, 23] leading to a high-dimensional parameter space (25–50 dimensions is not uncommon). Searching such a space directly is impractical and so current methods typically rely on manual initialization of the body model. Additionally, they often exploit strong priors characterizing the types of motions present. When such algorithms lose track (as they always do), the dimensionality of the state space makes it difficult to recover.

While the full body pose is hard to recover directly, the location and pose of individual limbs is much easer to compute. Many good head detectors exist and limb detectors have been used for some time (e.g. [18]). The approach we take here can use bottom up information from feature

detectors of any kind and consequently should be able to cope with a rich variety of input images. In our implementation we exploit background/foreground separation for computational simplicity but part detectors which perform well against arbitrary backgrounds are becoming standard [18, 26].

With a kinematic tree model, exploiting this partial, "bottom-up" information is challenging. If one could definitively detect the body parts then inverse kinematics could be used to solve for the body pose, but in practice low-level part detectors are noisy and unreliable. The use of a loose-limbed model and belief propagation provides an elegant framework for incorporating information from part detectors. Because the inference algorithm operates over a general graph rather than a forward chain as in traditional particle filter trackers, it is also straightforward to perform forward–backward smoothing of the limb trajectories without modifying the basic approach.

A loose-limbed body model requires a specification of the probabilistic relationships between joints at a given time instant and over time. We represent these non-Gaussian relationships using mixture models that are learned from a database of motion capture sequences. It is worth noting that these models encode information about joint limits and represent a relatively weak prior over human poses, which is appropriate for tracking varied human motions.

The model also requires an image likelihood measure for each limb. Using training data of known limb poses in images, we learn a novel likelihood that captures the joint statistics of first and second derivative filter responses at multiple scales. We formulate and learn the likelihoods using a Gibbs model based on the maximum entropy principle [28].

We test the method by tracking a subject viewed from four calibrated cameras in an indoor environment with no special clothing. Quantitative evaluation is performed using a novel motion capture testbed that provides "ground truth" human motion from a commercial motion capture system that is synchronized with the video streams [1]. In particular we compare the accuracy of our method with that of a more standard kinematic tree body tracker using annealed particle filtering [5]. We find that the traditional approach looses track rapidly compared with the loose-limbed model when the image quality is poor.

**Previous work**

Disaggregated models are not new for finding or tracking articulated objects and date back at least to Fischler and Elschlager's pictorial structures [8]. Variations on this type of model have been recently applied by Burl *et al.* [1], Felzenszwalb and Huttenlocher [7], Coughlan and Ferreira

[3], Ioffe and Forsyth [10, 11, 12] and Ramanan and Forsyth [18]. Ioffe and Forsyth [10, 11] first find body parts and then group them into figures in a bottom-up fashion. The approach exploits the fact that they have a discrete set of features that need to be assembled, but it prevents them from using rich likelihood information to "co-operate" with the body model when estimating the pose. Ramanan and Forsyth [18] propose an elegant estimation of appearance models jointly with the body's trajectory, but their inference algorithm relies on the fact that the 2D model has a relatively low-dimensional state-space for each body part. A similar approach to ours has been adopted in [27] for tracking a 2D human silhouette using a dynamic Markov network. A much simplified observation model was adopted in [27] and their system does not perform automatic initialization. They adopt a somewhat different inference algorithm and a comparison between the two methods merits future research.

In previous work [22] we presented the general loose-limbed body model and belief propagation algorithm but only addressed the problem of human pose estimation at a single time instant; here we extend the inference method over time to perform visual tracking. In [22], the potential functions linking limbs were constructed manually whereas here they are learned from training data and are also extended in time. Here we also propose a multi-view eigen-method to implement bottom-up body part detectors and we exploit a learned Gibbs likelihood model [19].

## 2 Loose-limbed body model

Following the framework in [22] the body is represented by a graphical model in which each graph node corresponds to a body part (upper leg, torso, etc.). Each part has an associated configuration vector defining the part's position and orientation in 3-space. Placing each part in a global coordinate frame enables the part detectors to operate independently while the full body is assembled by inference over the graphical model. Edges in the graphical model correspond to position and angle relationships between adjacent body parts in space and time, as illustrated in Figure 1.

In order to describe the body parts in a graphical model, we assume the variables in a node are conditionally independent of those in non-neighboring nodes given the values of the node's neighbors. Each part/limb is modeled by a tapered cylinder having 5 fixed and 6 estimated parameters. The fixed parameters $\Phi_i = (l_i, w_i^p, w_i^d, o_i^p, o_i^d)$ correspond respectively to the part length, width at the proximal and distal ends and the offset of the proximal and distal joints along the axis of the limb as shown in Figure 2. The estimated parameters $\mathbf{X}_i^T = (\mathbf{x}_i^T, \Theta_i^T)$ represent the configuration of the part $i$ in a global coordinate frame where $\mathbf{x}_i \in \mathbb{R}^3$ and $\Theta_i \in \mathrm{SO}(3)$ are the 3D position of the proximal joint

[1] Available at http://www.cs.brown.edu/research/vision/motioncapture/.



Figure 2: *Parameterization of part i.*

and the angular orientation of the part respectively. The rotations are represented by unit quaternions.

Each directed edge between parts $i$ and $j$ has an associated potential function $\psi_{ij}(\mathbf{X}_i, \mathbf{X}_j)$ that encodes the compatibility between pairs of part configurations and intuitively can be thought of as the probability of configuration $\mathbf{X}_j$ of part $j$ conditioned on the $\mathbf{X}_i$ of part $i$. The potential $\psi_{ij}(\mathbf{X}_i, \mathbf{X}_j)$ is in general non-Gaussian and is approximated by a mixture of $M_{ij}$ Gaussians:

$$\psi_{ij}(\mathbf{X}_i, \mathbf{X}_j) = \lambda^0 \mathcal{N}(\mathbf{X}_j; \mu_{ij}, \Lambda_{ij}) + \qquad (1)$$
$$(1 - \lambda^0) \sum_{m=1}^{M_{ij}} \delta_{ijm} \mathcal{N}(\mathbf{X}_j; F_{ijm}(\mathbf{X}_i), G_{ijm}(\mathbf{X}_i))$$

where $\lambda^0$ is a fixed outlier probability, $\mu_{ij}$ and $\Lambda_{ij}$ are the mean and covariance of the Gaussian outlier process, and $F_{ijm}(\cdot)$ and $G_{ijm}(\cdot)$ are functions that return the mean and covariance matrix respectively of the $m$-th Gaussian mixture component. $\delta_{ijm} \geq 0$ is the relative weight of an individual component and $\sum_{m=1}^{M_{ij}} \delta_{ijm} = 1$.

## 2.1  Learning limb conditionals

Given a ground truth parameter vector $\mathbf{X}_j$ for part $j$, we can construct the 3D object-to-world transform $M(\mathbf{X}_j)$ defining the pose of the limb $j$ as

$$M(\mathbf{X}_j) = M(\mathbf{X}_i) M(\mathbf{X}_{ij}) \qquad (2)$$

where $M(\mathbf{X}_i)$ is the pose of the neighboring spatial or temporal part, and $\mathbf{X}_{ij}$ encodes the position and orientation of part $j$ in $i$'s coordinate frame. We can approximate the potential compatibility functions:

$$\begin{aligned}
\psi_{ij}(\mathbf{X}_i, \mathbf{X}_j) &\approx p(\mathbf{X}_j | \mathbf{X}_i) \\
&= p(M(\mathbf{X}_j) | M(\mathbf{X}_i)) \\
&= p(M(\mathbf{X}_i) M(\mathbf{X}_{ij}) | M(\mathbf{X}_i)) \\
&\approx p(M(\mathbf{X}_{ij})) = p(\mathbf{X}_{ij})
\end{aligned} \qquad (3)$$

by learning the distribution over $\mathbf{X}_{ij}$ to fix the $F_{ijm}(\cdot)$ and $G_{ijm}(\cdot)$ functions from (1). We model all spatial and temporal potentials using mixtures of Gaussians with



Figure 3: *Learned Spatial and Temporal Potentials.* Spatial and temporal potentials are illustrated by sampling from them. The potentials for the lower limbs (arms and legs) and head are shown. The spatial potentials show the distribution of limb positions and orientations conditioned on the neighboring limb. Green spheres indicate the joint position of a sample while the red spheres indicate the distal end of the limb for each sample. The spread of these samples illustrates the learned distribution encoded by the potentials. The temporal potentials shown are for the forward time direction.

$M_{ij} = 3$ components, and for example the first component $F_{ij1}(\mathbf{X}_j) = M^{-1}(M(\mathbf{X}_i) M(\tilde{\mathbf{X}}_{ij1}))$ where $\tilde{\mathbf{X}}_{ij1}$ is the mean of the first learned component of $p(\mathbf{X}_{ij})$. The distributions are learned using $S = 4928$ ground truth motion capture frames of walking data collected at 60 Hz.

We use a standard iterative Expectation-Maximization (EM) algorithm with K-means initialization for learning the Gaussian mixture model (GMM), however care must be taken to estimate the mean and covariance of the quaternion orientations. Given a set of $S$ unit quaternions $Q = \{q_0, q_1, \ldots, q_S\}$ where $q_i = [q_{i,x}, q_{i,y}, q_{i,z}, q_{i,w}]$, we extend the approximation presented in [4] to approximate the mean of $Q$ by

$$E_q[Q] \approx \frac{1}{S} \left[ \sum_{i=0}^{S} \frac{q_{i,x}}{q_{i,w}}, \sum_{i=0}^{S} \frac{q_{i,y}}{q_{i,w}}, \sum_{i=0}^{S} \frac{q_{i,z}}{q_{i,w}}, S \right]. \qquad (4)$$

This approximation suffers from a singularity when any $q_{i,w} \to 0$. To mitigate the effect of this singularity we compute $E_q[Q]$ in a normalized quaternion space constructed to minimize $\max_{q_i \in Q}(q_i \cdot [0, 0, 0, 1]^T)$. Similarly we approximate the covariance of $Q$ by computing the deviations $\tilde{q}_i = q_i^{-1} * E_q[Q]$ and set $Cov_q[Q] \approx$

$$\frac{1}{S} \sum_{i=0}^{S} \left( \left[ \frac{\tilde{q}_{i,x}}{\tilde{q}_{i,w}}, \frac{\tilde{q}_{i,y}}{\tilde{q}_{i,w}}, \frac{\tilde{q}_{i,z}}{\tilde{q}_{i,w}} \right]^T \left[ \frac{\tilde{q}_{i,x}}{\tilde{q}_{i,w}}, \frac{\tilde{q}_{i,y}}{\tilde{q}_{i,w}}, \frac{\tilde{q}_{i,z}}{\tilde{q}_{i,w}} \right] \right). \qquad (5)$$

While our learning algorithm is general enough to learn

distributions that have couplings between positional and rotational components of the state space, resulting in block-diagonal covariance matrices, for computational purposes we restrict ourselves to the diagonal-covariance distributions. For sampling and evaluating the probability of the GMM we refer the reader to [4].

Figure 3 shows a few of the learned potential distributions. Samples are shown from several limb-to-limb potentials. For example, the lower leg distribution is shown conditioned on the pose of the upper leg. The proximal end of the shin (green circle) is predicted with high confidence given the thigh location, but there is a wide distribution over possible ankle locations, as expected.

## 3   Image Likelihoods

The inference algorithm outlined in the next section combines the body model described above with a probabilistic image likelihood model. We define $\phi_i(\mathbf{X}_i)$ to be the likelihood of observing the image measurements conditioned on the pose of limb $i$. Ideally this model would be robust to partial occlusions, the variability of image statistics across different input sequences, and variability among subjects.

To that end, we combine a variety of cues including multi-scale edge and ridge filters following [20]. However, we explicitly model the conditional dependencies between the various filter responses by learning the joint density using a Gibbs model [19, 28] of the form

$$p(\mathbf{f} \mid \mathbf{X}_i) \propto \exp\left( -\sum_i \langle \lambda^{(i)}, \xi^{(i)}(\mathbf{f}, \mathbf{X}_i) \rangle \right),$$

where $\mathbf{f}$ represents a vector of filter responses, the $\xi^{(i)}$ are functions selecting various marginals and the $\lambda^{(i)}$ are their learned weights. Since this likelihood is trained also in situations where the limb is partially or fully occluded, it is fairly robust to these conditions.

Separate foreground models are learned for the appearance of each limb. In addition, a pooled background model is learned from non-limb patches sampled from the training images. These are combined into a limb likelihood by taking the likelihood ratio [19]. These likelihood ratios along with background subtraction information are then combined across views, assuming independence of the views conditioned on the limb position.

## 4   Non-parametric BP

Inferring the body pose in our framework is defined as estimating belief in the graphical model. To cope with the continuous 6D parameter space of each limb, the non-Gaussian



Figure 4: *Message Product.* The head, upper arms, and upper legs send messages to the torso. Samples from these messages are illustrated by showing the predicted torso location with green balls. The distribution over the orientation of the torso is illustrated by showing a red ball at the distal end of the torso for each sample. While any single message respresents uncertain information about the torso pose, the product of these messages tightly constrains the torso position and orientation.

conditionals between nodes, and the non-Gaussian likelihood, we use a form of non-parametric belief propagation [13, 25]. The approach is a generalization of particle filtering [6] which allows inference over arbitrary graphs rather than a simple chain. In this generalization the "message" used in standard belief propagation is approximated with a particle set, and the conditional distribution used in standard particle filtering is replaced by a product of incoming message sets. The two formulations [13, 25] have different strengths; we adopt the PAMPAS algorithm [13] because it maps better to our models where the potentials are small mixtures of Gaussians and the likelihoods are simple to evaluate up to an unknown normalization. NBP [25] is more suitable for applications with complex potential functions. We use the Gibbs sampler from [25] to evaluate products of $D > 2$ messages.

The message passing framework is illustrated in Figure 4 where the head, upper arms and upper legs all send messages to the torso. These messages are distributions that are represented by a set of weighted samples as in particle filtering. Belief propagation requires forming the product of these incoming messages. As Figure 4 shows, the individual limbs may not constrain the torso very precisely. The

product over all the incoming messages however produces a very tight distribution over the torso pose.

A message $m_{ij}$ from node $i \to j$ is written

$$m_{ij}(\mathbf{X}_j) = \int \psi_{ij}(\mathbf{X}_i, \mathbf{X}_j)\phi_i(\mathbf{X}_i) \prod_{k \in A_i \setminus j} m_{ki}(\mathbf{X}_i)\mathrm{d}\mathbf{X}_i,$$

where $A_i$ is the set of neighbors of node $i$ and $\phi_i(\mathbf{X}_i)$ is the local likelihood associated with node $i$. The message $m_{ij}(\mathbf{X}_j)$ can be approximated by importance sampling $N' = (N-1)/M_{ij}$ times from a proposal function $f(\mathbf{X}_i)$, and then doing importance correction. As discussed in [13] the $N'$ samples may be stratified into groups with different proposal functions $f(\cdot)$, so some proportion $\lambda_B N'$ of samples come from the product of all incoming messages $A_i$ into the node, $\lambda_I N'$ come from $A_i \setminus j$ (i.e. $A_i$ excluding $j$) and $\lambda_S N'$ from an importance function $Q_t(\mathbf{X}_i)$ which is in general a function of the time-step $t$ — we use a limb proposal distribution based on local image measurements desribed in Section 5. For algorithmic details see [13].

The basic algorithm leaves open the question of what proportions to use in the stratified sampler and what order to update the messages in. We use a 3-frame windowed smoothing algorithm for our tracking results where the estimates at time $t$ are based on observations at times $(t-1, t, t+1)$. There are 30 nodes in the graph (10 body parts at each time-step) and 94 edges (18 between adjacent body parts within each time-step and two between each part at each consecutive time-step). All the messages are updated in batch, and this batch update takes place 4 times in 4 belief-propagation iterations. For the first iteration, the proportion of limb proposal samples is $\lambda_S = 0.50$ and this proportion halves for each subsequent iteration. In each iteration the proportion of samples taken from the belief estimate is $\lambda_B = 1/2(1 - \lambda_S)$ and the remainder $\lambda_I$ are taken from the incoming message product.

The algorithm must sample, evaluate, and take products over Gaussian distributions defined over $SO(3)$ and represented in terms of unit quaternions. We adopt the approximation given in [4] for dealing with rotational distributions by treating the quaternions locally linearly in $\mathbb{R}^4$ — this approximation is only valid for kernels with small rotational covariance and can in principle suffer from singularities if product distributions are widely distributed about the sphere, but we have not encountered problems in practice.

# 5   Bottom-up Part Detectors

Occlusion of body parts, changes in illumination, and a myriad of other situations may cause a person tracker to lose track of some, or all, parts of a body. We argue that reliable tracking requires bottom-up processes that constantly



Figure 5: *Multi-view Eigenfeatures.* We learn the correlations between the projections of an object in our fixed cameras by concatenating the four views at each time-step into a single 'multi-view' image vector. Top row: mean multi-view head. Next three rows: first three principal components.

search for body parts and suggest their location and pose to the tracker; we call these "shouters"[2].

One expects shouters to be noisy in that they will sometimes fail to detect parts or will find spurious parts. Furthermore they will probably not be able to differentiate between left and right arms. Both of these behaviours can be seen in Figure 6a. Even these noisy "guesses" provide valuable low-level cues, however, and our belief propagation framework is designed to incorporate this bottom-up information in a principled way. As described in Section 4 we use a stratified sampler for the messages to graph node $i$ at time $t$ that draws some samples from an importance function $Q_t(\mathbf{X}_i)$. This importance function is constructed by the node's shouter process, and draws samples from locations in pose space (3D location and orientation) near the detected body parts.

**Multi-View Eigenspaces**

There are many approaches to body-part detection in single or multiple images. We have implemented simple eigentemplate detectors for the head, upper arms, and lower legs; other shouters could be added as desired. Given calibrated training images with known body-part locations, we build a set of *multi-view* training images. Specifically, we construct a single training sample from the four camera views by concatenating the image regions of the part in each view. We perform PCA on these multi-view images as described in [16], keeping 9–40 principal components, depending on the detector, which describe approximately $80\%$ of the variation in the training data. Figure 5 shows the first few principal components of our head detector model; each part detector is orientation independent.

---

[2]This term came from discussions with A. Jepson and D. Fleet.

Using the training data we construct a bounding box in 3-space where we expect each part to appear. We exploit the fact that the background is static, model it using a mixture model at each pixel, and perform standard foreground detection [24]. Selecting any camera view, we examine all foreground pixels within the projected bounding box region for the given body part. Each pixel defines a ray in 3D and we search along this ray for matches to our orientation-independent eigen-model, rejecting any location on the ray which does not project to a foreground pixel in every view. For each of the 10 most probable 3D locations we find the 5 closest multi-view matches from the training set and use their orientations to construct 50 candidate poses for the proposal mixture distribution $Q_t(\mathbf{X}_i)$.

# 6   Experiments and Evaluation

Figure 6*a* shows the automatic initialization of the 3D body model using bottom-up part detectors. Note that we use only detectors for the head, upper arms, and calfs and that these detectors are very inaccurate. While they give a rough 3D location and orientation for the limbs, they cannot differentiate left from right limbs reliably. Note also that the right calf was not detected. For body parts with no bottom-up detector, the initialization is random (Figure 6*b*). After several iterations of belief propagation, the algorithm "finds" the limbs and has a reasonable distribution over the limbs poses (Figure 6*c* and *d*). Figure 7 shows the results of tracking over 25 frames after automatic initialization.

There are no standard performance metrics for video-based 3D human tracking. Ramanan and Forsyth [18] report tracking success whenever there is *any* overlap between a limb and the ground truth; this seems overly generous. We propose a quantitative evaluation of accuracy based on the absolute distance of true and estimated marker locations on the limbs. We chose 15 markers corresponding roughly to the locations of the joints and "ends" of the limbs. For each limb we sample from the belief and compute the normalized likelihood of each sample to obtain a weight. These weights are then used to compute an expected absolute distance in $mm$ for the markers associated with the limb. The expected deviations are then summed over all defined virtual markers to produce the final distance-based error measure.

Figure 8 shows accuracy of the intialization (left) and tracking results (right). After a few iterations of belief propagation, the initialization error decreases and stays stable. We also observe that the error in the estimated pose increases only slightly over the tracking sequence.

To compare our method against the state of the art, we independently implemented a kinematic tree based tracker that uses annealed particle filtering [5]. This allows a quantitative performance comparison between the methods. Our implementation of [5] uses the same image likelihood as



Figure 8: *Quantitative tracking evaluation. (left)* Automatic initialization error as a function of iterations of the belief propagation algorithm. *(right)* Tracking error over a 50-frame sequence. The dotted black and dashed blue lines show the error for the loose-limbed method with and without shouters respectively. The red solid line shows the error for the kinematic tree method [5].

used with the loose-limbed model and both trackers are initialized with the same ground-truth pose obtained by the motion capture system. As suggested in [5] the annealing process uses 10 layers and 200 particles. The distance error was computed using the same markers but here we sampled from the particle set, computed the likelihood, and normalized to obtain the weights used in computing the expected absolute marker distance. We found that the performance of the tracker was much poorer than that obtained in [5] and posit that this was due to the more complex image data in our experiments and the lack of contrast between the foreground and background; see Figure 8.

In Figure 8 the performance of the loose-limbed tracker is shown with and without body part detectors. Due to the stochastic nature of the algorithms, the mean and the standard deviation of the error was computed over 10 runs. Initially the kinematic tree model appears more accurate. This is due to the fact that the "ground truth" has the same kinematic structure while the loose-limbed model is able to deviate from that. The annealed particle filter however steadily moves away from the ground truth and becomes lost. Both versions of the loose-limbed tracker outperform the competing algorithm after the first three frames. Loose-limbed tracking with part detection slightly outperforms the tracker that does not rely on the part detection. In most cases the variance of the latter is slightly higher. We predict that this difference would be more significant if we had better part detectors.

# 7   Conclusion

We present a probabilistic method for fully automatic 3D human detection and tracking. We show that a "loose-limbed" model with continuous-valued parameters can effectively represent a person's location and pose, and that inference over such a model can be tractably performed using belief propagation over particle sets. The belief prop-



| a | b | c | d |

Figure 6: **Automatic Initialization from bottom-up detectors.** Each row corresponds to a different camera view (2 of the 4 views shown). The initialization used two frames but only the first frame is shown for brevity. *(a)* Samples from the shouter proposal distribution (head, upper arms, calves only). Notice that they completely fail to detect one calf while the other is detected by both left and right calf detectors. The upper arms are found but the edge is not well determined. The head is well localized. *(b)* Samples from the full proposal distribution. The body parts not constrained by shouters are sampled from a uniform distribution in position and orientation. *(c)* Samples from the belief distribution after 30 iterations of belief propagation. *(d)* Most likely limb poses after 30 iterations.

agation framework allows us to avoid distinguishing between initialization and tracking, but instead to use bottom-up part detectors to stabilize the motion estimation and provide "initialization" cues at every time-step.

The main advantages of our approach are: the complexity of the search task is linear rather than exponential in the number of body parts; bottom-up processes are integrated at every frame allowing automatic initialization and recovery from transient tracking failures; the conditional probabilities between limbs in space and time are learned from training data; a novel Gibbs likelihood model is learned from training data and models conditional dependencies between image measurements (filter responses); and forward-backward smoothing, either over a time-window or an entire sequence, is straightforward. Additionally, we exploit a novel data set with synchronized 3D "ground truth" and video data for the quantitative evaluation of performance. We also compared our method with the state of the art as proposed in [5].

While our preliminary results are promising, details of our implementation could be improved. We have used simple detectors for the head and limbs, but we expect that hands and feet would provide valuable additional cues. Other machine learning methods such as AdaBoost [26],

might prove faster and more robust than the eigenfeatures we adopt. For greater applicability the method must be extended to use monocular image data and to allow a moving camera.

There are also limitations imposed by our use of a loose-limbed model. Since we assume independence of, for example, the left and right arms conditional on the torso location, it is cumbersome to fully avoid poses where one limb penetrates another. These problems are much easier to address with a full kinematic tree body model, and therefore one might think of the loose-limbed model as an intermediate stage between the bottom-up part detectors and a full kinematic model. The details and implementation of such a scheme are postponed to future research.

## References

[1] M. Burl, M. Weber and P. Perona. A probabilistic approach to object recognition using local photometry and global geometry, *ECCV*, pp. 628–641, 1998.

[2] C. Bregler and J. Malik. Tracking people with twists and exponential maps, *CVPR*, pp. 8–15, 1998.

[3] J. Coughlan and S. Ferreira. Finding deformable shapes using loopy belief propagation, *ECCV* 3:453–468, 2002.



*Frame 7*          *Frame 12*          *Frame 17*          *Frame 22*

Figure 7: *Loose-limbed tracking.* The body model whose automatic initialization is shown in Figure 6 is tracked for a further 25 frames. Four sample frames are shown from 2 of the 4 camera views used.

[4] J. Deutscher, M. Isard and J. MacCormick. Automatic camera calibration from a single manhattan image, *ECCV*, pp. 175–188, 2002.

[5] J. Deutscher, A. Blake and I. Reid. Articulated body motion capture by annealed particle filtering, *CVPR*, II:126–133, 2000.

[6] A. Doucet, N. de Freitas and N. Gordon. Sequential Monte Carlo methods in practice, *Stats. for Eng. and Info, Sciences*, Springer Verlag, 2001.

[7] P. Felzenszwalb and D. Huttenlocher. Efficient matching of pictorial structures, *CVPR*, 2:66-73, 2000.

[8] M. Fischler and R. Elschlager. The representation and matching of pictorial structures. *IEEE. Trans. Computers*, C-22(1), 1973.

[9] A.T. Ihler, E.B. Sudderth, W.T. Freeman and A.S. Willsky. Efficient Multiscale Sampling from Products of Gaussian Mixtures, *NIPS*, 2003.

[10] S. Ioffe and D. Forsyth. Human tracking with mixtures of trees, *ICCV*, I:690–695, 2001.

[11] S. Ioffe and D. Forsyth. Probabilistic methods for finding people, *IJCV* 43(1):45–68, 2001.

[12] S. Ioffe and D. Forsyth. Finding people by sampling, *ICCV*, pp. 1092–1097, 1999.

[13] M. Isard. PAMPAS: Real-valued graphical models for computer vision, *CVPR*, I:613–620, 2003.

[14] S. Ju, M. Black and Y. Yacoob. Cardboard people: A parameterized model of articulated motion. *Int. Conf. on Automatic Face and Gesture Recognition*, pp. 38–44, 1996.

[15] J. MacCormick and M. Isard. Partitioned sampling, articulated objects, and interface-quality hand tracking. *ECCV* 2:3–19, 2000,

[16] Moghaddam B. and Pentland A., Probabilistic Visual Learning for Object Representation, PAMI 19(7):696–710, 1997.

[17] V. Pavolović, J. Rehg, T-J. Cham and K. Murphy. A dynamic Bayesian network approach to figure tracking using learned dynamic models, *ICCV*, pp. 94–101, 1999.

[18] D. Ramanan and D. Forsyth. Finding and tracking people from the bottom up, *CVPR*, II:467–474, 2003.

[19] S. Roth, L. Sigal, and M. Black. Gibbs likelihoods for Bayesian tracking, *CVPR*, 2004.

[20] H. Sidenbladh and M. Black. Learning the statistics of people in images and video, IJCV 54(1–3):183–209, 2003.

[21] H. Sidenbladh, M. Black and D. Fleet. Stochastic tracking of 3D human figures using 2D image motion, *ECCV*, 2:702–718, 2000.

[22] L. Sigal, M. Isard, B.H. Sigelman, M. Black. Attractive people: Assembling loose-limbed models using non-parametric belief propagation, *NIPS*, 2003.

[23] C. Sminchisescu and B. Triggs. Covariance scaled sampling for monocular 3D body tracking, CVPR, 1:447–454, 2001.

[24] C. Stauffer and W. Grimson. "Adaptive background mixture models for real-time tracking." CVPR, pp. 246–252, 1999.

[25] E. Sudderth, A. Ihler, W. Freeman and A. Willsky. Nonparametric belief propagation, *CVPR*, I:605–612, 2003.

[26] P. Viola and M. Jones. Rapid object detection using a boosted cascade of simple features, CVPR, I:511–518, 2001.

[27] Y. Wu, G. Hua, T. Yu. Tracking articulated body by dynamic Markov network, ICCV, pp. 1094–1101, 2004.

[28] S. Zhu, Y. Wu, and D. Mumford. FRAME: Filters, random field and maximum entropy: Towards a unified theory for texture modeling. *PAMI*, 27(2):1–20, 1998.

# EXHIBIT 4

Trials@uspto.gov                                                    Paper 25
571-272-7822                                       Entered: February 22, 2024

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

META PLATFORMS, INC.; INSTAGRAM, INC.; WHATSAPP LLC;
META PLATFORMS TECHNOLOGIES, LLC; AND GIPHY, INC.,
Petitioner,

v.

VL COLLECTIVE IP LLC,
Patent Owner.

———————————

IPR2023-00924
Patent 7,436,980 B2

———————————

Before KARL D. EASTHOM, JEFFREY S. SMITH, and
DAVID C. McKONE, *Administrative Patent Judges*.

SMITH, *Administrative Patent Judge*.

ORDER
*Granting Petitioner's Motion under 37 C.F.R. § 42.52(a) to Apply for
Subpoena under 35 U.S.C. § 24*

IPR2023-00924
Patent 7,436,980 B2

Petitioner filed a Petition (Paper 3) requesting *inter partes* review of claims 1–16 of U.S. Patent No. 7,436,980 B2 (Ex. 1001, "the '980 patent"). In our Decision to Institute (Paper 11, "Dec."), we granted institution and stated that Petitioner has not demonstrated a reasonable likelihood of showing that a paper titled "Tracking Loose-limbed People" (Ex. 1009, "TLP") was prior art to the '980 Patent.  Dec. 56.

Petitioner, pursuant to our authorization, filed a Motion for Authorization to Compel Discovery and Production of Documents pursuant to 37 C.F.R. § 42.52(a), including issuing subpoenas pursuant to 35 U.S.C. § 24 and filing any testimony or documents produced therefrom, in order to address the public availability of TLP before May 27, 2004, which is the effective filing date of the '980 patent.  Paper 17 ("Mot.").  TLP was presented at an IEEE Computer Society Conference on Computer Vision and Pattern Recognition ("the CVPR conference"), which was held from June 27 to July 2, 2004.  Ex. 1010.  TLP was submitted to the CVPR conference on November 19, 2003, and the TLP manuscript was submitted to the CVPR conference on April 9, 2004.  Ex. 1010.

In particular, Petitioner requests authorization to compel discovery and production of documents from the authors of TLP, who are Leonid Sigal, Sidharth Bhatia, Stefan Roth, Michael Black, and Michael Isard ("the authors"); the inventors of the '980 patent, who are Leonid Sigal, Ying Zhu, and Dorin Comaniciu ("the inventors"); and the prior assignees of the '980 patent, including Siemens Corp., Siemens Corp. Research Inc., and Siemens Medical Solutions USA, Inc ("the prior assignees") (all together "the TLP Discovery Parties") to show whether TLP was publicly accessible before May 27, 2004.  Mot. 3.  Patent Owner filed an Opposition.  Paper 20

IPR2023-00924
Patent 7,436,980 B2

("Opp.").  Both parties support their respective arguments by analyzing the factors listed in *Garmin International, Inc. v. Cuozzo Speed Technologies LLC*, IPR2012-00001, 6–7 (PTAB Mar. 5, 2013) (Paper 26) ("the *Garmin* factors").  *See generally*, Mot.; Opp.

We held a conference call on February 20, 2024, with the parties to discuss Petitioner's motion.  Judges Easthom, Smith, and McKone, as well as Todd Baker, Jonathan Brit, Ellisen Turner, and Jennifer Bush for Petitioner, and Christine Lehman, Jaime Cardenas-Navia, and Philip Eklem for Patent Owner, participated on the call.  We held the call in order to determine whether the parties could obtain information regarding the publication date of TLP without going through the subpoena process, given the short time frame of this *inter partes* review and the fact that two of the witnesses live abroad.

During the call, Petitioner stated that it seeks information, such as emails and invention disclosure documents which would identify details of the public distribution of TLP.  Petitioner stated that a subpoena would not be necessary with respect to the inventors and prior assignees if Patent Owner requests information from the inventors and prior assignees related to the publication date of TLP within a time period beginning one month before the conference and ending one month after the conference.  Petitioner also requested permission to obtain a subpoena to gather this information in the event that Patent Owner's request is unsuccessful.

During the call, Patent Owner stated that it wanted Petitioner's request to be limited to emails related to the peer review process discussed in the Declaration of Dr. Bajaj (Ex. 1004).  Patent Owner stated that Petitioner's request is overbroad and seeks new facts to support a new theory not

IPR2023-00924
Patent 7,436,980 B2

advanced in the Declaration.  Petitioner stated that the request should not be limited to the peer review process, but should cover the conference generally, and that its request is not overbroad because the request concerns information about a single paper at a single event within a two-month window of the event.  Patent Owner stated that it would request the information from the inventors and prior assignees within a couple of weeks, but that it could not guarantee that the inventors and prior assignees would cooperate with the request.

During the call, we raised the issue of whether, in the event that the inventors and prior assignees refuse to cooperate with Patent Owner's request, we should draw an inference that the information that would have been obtained would have been favorable to Petitioner.  We note that the prior assignees have agreed with Patent Owner that, "whenever reasonably requested by Assignee, Assignor will execute all papers, take all rightful oaths, and do all acts which may be reasonably necessary for securing and maintaining the Patents in any country and for vesting title thereto in Assignee, its successors, assigns and legal representatives or nominees." Ex. 1047 ¶ 4.  Similarly, the inventors have agreed to "generally do everything possible which said Assignee, its successors, assigns or legal representatives shall consider desirable for aiding in securing and maintaining proper patent protection for said improvements and for vesting title to said improvements and all applications for patents and all patents on said improvements, in said Assignee, its successors, assigns and legal representative."  Ex. 1044, 3.  Thus, it appears that Patent Owner has the power to compel the prior assignees and the inventors to cooperate in discovery in this proceeding.

IPR2023-00924
Patent 7,436,980 B2

We also emphasized the necessity of issuing a final decision within a year of the institution date.  Petitioner stated that it expected to complete its discovery before filing the Petitioner's Reply.

We find Petitioner's request of Patent Owner to be reasonable, and we appreciate the willingness of the parties expressed during the call to seek to obtain information about the publication date of TLP without going through the subpoena process.  We also understand that the subpoena process may still be necessary to obtain information about the publication date of TLP.

In any event, we evaluate the Motion to Compel in light of the *Garmin* factors.  A party moving for subpoena "must show that such additional discovery is in the interests of justice." 37 C.F.R. § 42.51(b)(2). The Board has identified factors important in determining whether an additional discovery request meets the standard of being "in the interest of justice."  *Garmin International, Inc.*, IPR2012-00001 at 6–7.  Having reviewed arguments of the parties, we find that the *Garmin* factors weigh in favor of allowing the discovery for the reasons given below.

*Garmin Factor 1 – Useful Information*

Petitioner contends that TLP was part of the CVPR conference held from June 27 to July 2, 2004.  Mot. 4.  Petitioner contends that the TLP Discovery Parties may have information about the public availability of TLP.  *Id*.  In particular, Petitioner contends that the TLP Discovery Parties may have emails confirming the date of public dissemination of TLP to the conference goers in advance of the conference.  *Id*. at 4, 6.  Petitioner also contends that Michael Black, one of the authors, uploaded TLP to a website and indicated that TLP was publicly available in January 2004.  *Id*. at 5.

IPR2023-00924
Patent 7,436,980 B2

Patent Owner contends that Petitioner has not shown that the TLP Discovery Parties will have information about the TLP publication date. Opp. 4-5.  In particular, Patent Owner contends that Petitioner has not shown that the authors have emails showing the date of public accessibility of TLP before May 27, 2004.  *Id*. at 7.  Patent Owner also contends that Petitioner has not shown that Michael Black indicated that TLP was publicly available in January 2004, nor that the January 2004 date relates to public accessibility through the conference.  *Id*. at 6.

Considering the first Garmin factor, Petitioner has shown, beyond speculation, that TLP was first registered with the CVPR conference on November 14, 2003, and that documents such as emails and brochures in the possession of the TLP Discovery Parties dated between November 14, 2003, and May 27, 2004, likely would provide useful information regarding the public accessibility of TLP.  In particular, this information would be useful in determining whether TLP was disseminated to the CVPR conference goers before May 27, 2004.  Similarly, Petitioner has shown, beyond speculation, that author Michael Black can provide useful information about whether he made comments on a website regarding the date of public accessibility of TLP.

*Garmin Factor 2 – Litigation Positions*

Both parties agree that the request does not seek litigation positions of Patent Owner.  Mot. 6; Opp. 7.

*Garmin Factor 3 – Equivalent Information*

Petitioner contends that the TLP Discovery Parties have not responded to Petitioner's repeated requests for information showing the public availability of TLP before May 27, 2004.  Mot. 6–7.  Patent Owner

6

IPR2023-00924
Patent 7,436,980 B2

contends that Petitioner could obtain other information to show the date of public availability of TLP without a discovery request.  Opp. 8.

Considering Garmin Factor 3, Patent Owner has not indicated what other information Petitioner could obtain to show the date of public accessibility of TLP.  We agree with Petitioner, that other information does not appear to be available.

*Garmin Factor 4 -- Instructions*

Petitioner contends that the discovery request is limited and would simply request documents such as conference brochures or emails, and testimony sufficient to show the public availability of TLP.  Mot. 7.  Patent Owner contends that Petitioner has not disclosed its proposed instructions. Opp. 8.

Considering Garmin Factor 4, we agree with Petitioner, that instructions for documents such as brochures and emails related to TLP, and testimony sufficient to show the date of public availability of TLP, are easily understandable.

*Garmin Factor 5 -- Burden*

Petitioner contends that its discovery request is not overly burdensome to answer because it may be satisfied by the production of a small number of documents or a declaration in lieu of testimony.  Mot. 7–8. Patent Owner contends that the request broadly seeks information related to any conceivable form of public accessibility.  Opp. 9.  Patent Owner contends that Petitioner may not seek this information for the first time in reply.  *Id*. at 10.  Patent Owner contends that seeking discovery from ten or more third parties underscores the burdensome nature of the request.  *Id*.

IPR2023-00924
Patent 7,436,980 B2

Considering Garmin Factor 5, Petitioner's request for third party discovery is not overly burdensome to Patent Owner.  Further, producing documents such as emails and brochures relating to the date of public accessibility of TLP, and testimony sufficient to show the date of public accessibility, is not overly burdensome to the TLP Discovery Parties.

*Conclusion*

We determine that Petitioner's request for third party discovery would be useful and not unduly burdensome, and grant Petitioner's request, specifically concerning "the public availability of TLP before May 27, 2004, the earliest claimed priority date of the '980 Patent."  Paper 17, 1.

IPR2023-00924
Patent 7,436,980 B2

It is

ORDERED that Patent Owner shall request from the inventors and prior assignees of the '980 patent, pursuant to their agreements under Exhibits 1044 and 1047, information related to the publication date of TLP (Ex. 1009), including documents dated between April 9, 2004 and August 2, 2004, and invention disclosure statements for the '980 patent;

FURTHER ORDERED that Petitioner's Motion Under 37 C.F.R. § 42.52(a) to Apply for Subpoena Under 35 U.S.C. § 24 to Compel Production of Documents and Testimony from the TLP Discovery Parties is granted;

FURTHER ORDERED that the scope of the Subpoena shall be limited to information related to the publication date of TLP; and,

FURTHER ORDERED that Patent Owner is permitted to attend any deposition testimony that occurs under the Subpoena and to cross-examine each witness, but only regarding the subject matter of the direct testimony of the witness.

IPR2023-00924
Patent 7,436,980 B2

For PETITIONER:

W. Todd Baker
Ellisen Shelton Turner
Jonathan D. Brit
KIRKLAND & ELLIS LLP
todd.baker@kirkland.com
ellisen.turner@kirkland.com
jonathan.brit@kirkland.com

Jennifer R. Bush
FENWICK & WEST LLP
jbush@fenwick.com

For PATENT OWNER:

Christine E. Lehman
Michael Matulewicz-Crowley
Philip J. Eklem
Jaime F. Cardenas-Navia
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
clehman@reichmanjorgensen.com
mmatulewicz-crowley@reichmanjorgensen.com
peklem@reichmanjorgensen.com
jcardenas-navia@reichmanjorgensen.com